IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SCOTTIE FITZGERALD ROWELL ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 3:13-cv-124-WHA |
| ) | |
| KENNETH JONES, et al., ) | |
| ) | |
| Respondents, ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**A. INTRODUCTION**.

In 1993, Rowell was convicted in the Circuit Court of Lee County, Alabama of attempted murder and sentenced to 75 years imprisonment. He appealed; his conviction was affirmed. *Rowell v. State*, 647 So.2d 67 (Ala. Crim. App. 1994). He later sought collateral relief through two ALA. R. CRIM. P. 32 petitions, both of which were denied by the trial and appellate courts of Alabama.

In 2011, Rowell filed a third ALA. R. CRIM. P. 32 petition alleging that newly discovered evidence demonstrated his innocence. The trial court denied the Rule 32 petition; so did the Alabama Court of Criminal Appeals.

> In the present petition, Rowell contended that newly discovered evidence existed which required that his conviction be vacated. Specifically, Rowell asserted that one of the State's witnesses, Harvey Sanford, recanted portions of the testimony he gave at Rowell's trial. The State argued that Sanford's alleged recantation did not amount to newly discovered evidence under Rule 32.l(e), Ala. R. Crim. P.

(Mem. Op. Ala. Crim. App., Doc. # 9-7 at 2).

The Court concluded that Sanford's affidavit did not constitute newly discovered evidence within the meaning of the rule, and affirmed the trial court's denial of his Rule 32 petition. *Rowell v. State*, 152 So. 3d 458 (Ala. Crim. App. 2012) (Mem. Op.). The Alabama Supreme Court denied certiorari. *Ex parte Rowell*, 156 So. 3d 1001 (Ala. 2012).

Rowell then filed this 28 U.S.C. § 2254 habeas corpus petition in this court on February 27, 2013. The parties do not dispute that Rowell's habeas petition is barred by the one-year limitations period established in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). Rowell argues that his actual innocence excuses this time bar. The respondents contend that Rowell is not excused from the time bar because he fails to show that the decisions of the state courts denying him relief were an unreasonable application of or contrary to established federal law. The respondents are right as will be explained below. Rowell is not entitled to habeas relief.

## B. DISCUSSION

> Actual innocence, if proved, may serve as a gateway through which a petitioner may bring an untimely federal habeas petition. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (involving an untimely 28 U.S.C. § 2254 petition). To meet the "actual innocence" threshold requirement, a petitioner must show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. A successful actual-innocence-gateway claim to overcome a procedural bar requires a petitioner to support his allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

*Smith v. United States*, No. 14-13595, 2016 WL 492332, at *1 (11th Cir. Feb. 9, 2016).

The *Schlup* test "ensures that [the] petitioner's case is truly extraordinary, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." 513

2

U.S. at 327 (internal quotation marks and citation omitted). Thus, to qualify for an equitable exception to the one-year statute of limitation and obtain federal review, Rowell must prove that "he is 'actually innocent,'" *id.*, by producing "new reliable evidence ... not presented at trial," *id*. at 324, that "raise[s] sufficient doubt about [his] guilt to undermine confidence in the result of the trial," id. at 317.

Rowell's innocence claim is based on an affidavit from a person who testified at Rowell's trial.  This is how in the Alabama Court of Criminal Appeals explained what happened.

> Rowell's conviction arose out of the attempted murder of Jeffery Lamar Jones. In <u>Rowell v. State</u>, 647 So. 2d 67  (Ala. Crim. App. 1994) we summarized the facts as follows:
>
>> "The State's evidence established the following. Around midnight on July 20, 1992, a group of 15 to 20 people were gathered outside an apartment located at 330-B Pleasant Circle, in Opelika, Alabama. A number of people in the group were drinking alcohol. Elizabeth Watts, a cousin of Jeffery Lamar Jones, the victim, lived in Apartment 330-B.
>>
>> "Jones testified that he was sitting on a car parked outside his cousin's apartment drinking a beer when Charlie Davis, Andrew Lewis Wilson, and the appellant arrived in Davis' automobile. Jones stated that the appellant, whom he had known '[p]ractically all through school[,] a long time,' and Wilson walked over to where he was sitting, while Davis went to talk to people. R. 42-43. According to Jones, the appellant was staring at him
>>
>>> "'[a]nd I said, "Why you staring at me?" And, you know, he didn't say anything. I said, "What's up, man, why you starin' at me?"  And he said, "What's up with you? You got to give up some money." I didn't know what he's talkin' about, so I said, "What money?" And he said the same thing, and he had his hand, you know, in his pocket.'" R. 43.  Jones stated that the appellant then pulled a pistol out of his pocket

3

>and pointed it at him. Jones described the pistol as a "three eighty." R. 69.
>
>"Jones testified that he 'had drunk about six beers' at that point and 'was already "bout intoxicated,"' and that he tried 'to walk away from trouble,' and started walking toward his cousin's apartment. R. 54, 45. Before he reached the apartment, he heard Wilson say, 'Shoot him! Shoot him!' R. 45. Jones stated that 'as [he] reached to pull the door open,' he was shot twice in the arm, and that, 'before [he could] get in the house,' he was shot twice in the back. Id. Jones said that he saw the appellant fire the first two shots that hit him. He testified that he did not see a gun in Wilson's possession or in the possession of anyone other than the appellant that night. ...
>
>"Several persons present at the scene of the shooting testified for the State. One of these witnesses testified that he saw the appellant at the scene prior to the shooting, but did not see who shot the victim. Another witness said that she saw Wilson at the scene, but did not know the appellant and did not see who shot the victim. This witness indicated that the shots were fired from an area other than the area in which the appellant was apparently located. Keith Ponds testified that he saw three men whom he did not know get out of 'a light brown car.' R. 107. Ponds stated that he saw one of the men 'pull a gun out of his hip pocket' and he heard a shot fired and fell to the ground. He stated that he then heard 'six more' shots. R. 108. Ponds said that the person with the gun was shooting toward Elizabeth Watts' apartment and that he saw the victim fall to the ground.
>
>"Harvey Sanford testified that Charlie Davis, Andrew Lewis Wilson, and the appellant arrived in a blue Datsun 280 automobile shortly before the shooting. Sanford stated that he observed Wilson and the appellant talking to the victim and that the appellant said 'give it up or something like that.' R. 169. According to Sanford, the appellant repeated this statement once or twice, then 'pulled [a] gun out' and began shooting at the victim, who was walking toward Apartment 330-B. R. 169-70. Sanford described the gun as a '380,' and said that he heard six shots, you know, but they said it only hit four, you know. I guess, you know, echoes.' R. 170. Sanford stated that the victim opened the door to Apartment 330-B, then fell on the floor.

4

> "The appellant testified in his own behalf. He stated that on the night of the shooting, he went to the apartments on Pleasant Circle with Charlie Davis and Andrew Lewis Wilson. He said that he and Wilson walked over to Jones and that he observed Jones sell Wilson some drugs. The appellant denied having a gun that night. He stated that he did not shoot Jones and that he did not know who did so."

647 So. 2d at 67-68.

Rowell attached an affidavit to his petition in which Harvey Sanford asserted that, contrary to his testimony at trial, he did not actually see Rowell fire any shots on the night in question. Rather, Sanford stated:

> "I was with Seymore Stinson in front of Pleasant Circle when we heard shots. From our position we could not see who fired the shots that caused the assault of Jeffery L. Jones. I gave false testimony before the jury because I was coerced and threatened by police (name unknown). The truth of the matter being that I did not see Scottie Fitzgerald Rowell not [sic] any other person fire the shots that led to the assault of Jeffery L. Jones"

(C. 25-26.)  According to Rowell, Sanford approached Rowell's family on January 10, 2011, and informed them that he gave false testimony at Rowell's trial. The above affidavit was signed on March 18, 2011. Rowell contended that this constituted newly discovered evidence under Rule 32.l(e), ALA. R. CRIM. P.

(Mem. Op. Ala. Crim. App., Doc. # 9-7 at 2-5).

Sanford's affidavit does not raise doubt about Rowell's guilt sufficient to undermine confidence in the result of the trial as required by *Schlup*. Stating that he gave false testimony at trial because he was coerced and threatened by an unidentified police officer, Sanford says that from his position he could not see who fired the shots and that he "did not see Scottie Fitzgerald Rowell not (sic) any other person fire the shots." (Doc. # 9-1 at 26).

5

As the Alabama Court of Criminal Appeals recognized, at trial the victim testified that Rowell came up to him, pulled out a pistol and pointed it at him. Then, as the victim walked away, he was shot first in the arm and then in the back. The victim testified that he saw Rowell with the gun when he was shot and that he saw no one else with a gun. (Doc. # 21-1 at 125-27).

A determination of actual innocence is based on an assessment of "the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup, supra* at 332; *see House v. Bell*, 547 U.S. 518 (2006). This court must "assess the likely impact of the [new] evidence on reasonable jurors." *House*, 547 U.S. at 538. The court concludes that Rowell's new evidence fails to satisfy *Schlup's* demanding standards. Sanford's affidavit does not prove that Rowell did not fire the shots which struck Jones. Based on the victim's testimony, a reasonable juror could conclude that Rowell was the shooter. Simply put, Rowell has failed to prove "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." All of the evidence, both old and new, fails to establish that Rowell is actually innocent. *See House*, 547 U.S. at 538; *Schlup*, 513 U.S. at 327–30.

Thus, the decision of the Alabama Court of Criminal Appeals was not contrary to or an unreasonable application of established federal law. Rowell has not demonstrated his actual innocence. Rowell's habeas petition is therefore barred from consideration by the one-year limitations period established in 28 U.S.C. § 2244(d). Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Rowell's 28 U.S.C. § 2254 petition for habeas relief be DENIED. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **June 3, 2016**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 20th day of May, 2016

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE